IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

_____

Case No. CIV-09-862-R

_____


(1) BRENT L. RHODES,

                                                  Plaintiff,

Versus


(2) LANGSTON UNIVERSITY
(3) BOARD OF REGENTS FOR LANGSTON UNIVERSITY
(4) DR. JOANN HAYSBERT, PRESIDENT OF LANGSTON UNIVERSITY
(5) DR. CAROLYN T. KORNEGAY, DEAN OF THE SCHOOL OF NURSING OF LANGSTON UNIVERSITY,

                                                  Defendants.
_____

**RESPONSE TO DEFENDANTS' OBJECTIONS RAISED IN REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

_____

**MARK T. HAMBY**
Oklahoma Bar No. 16942
Attorney for Plaintiff
**BONHAM & HOWARD, PLLC**
15 West 6th Street, Suite 2066
Tulsa, Oklahoma 74119
Telephone: (918) 744-7440
Facsimile: (918) 744-9358
Email:mark.hamby@b-htulsalaw.com

Plaintiff, Brent R. Rhodes, by and though his attorney, Mark T. Hamby of Bonham & Howard, P.L.L.C., responds to Defendants' objections raised in Reply to Plaintiff's Response, and in support thereof states as follows:

**Affidavit of Brent Rhodes - Exhibit 1.**

Defendants have objected to various parts of Plaintiff's Affidavit and Plaintiff will address each of the objections as set forth in Defendants' Reply.

**Objection to Paragraph 3:** Rhodes may testify about his own personal medical condition. Rhodes' testimony as to conditions from which he suffers is admissible. *Franklin v. Shelton*, 250 F.2d 92, 98 (10th Cir. 1957) (While she was competent to testify that she was suffering from these disorders, her testimony was not competent to establish that these subjective conditions were the proximate result of the accident.) In the instant case Rhodes is not seeking to establish that Langston caused any of his physical or mental disabilities, but only substantiate their existence. Defendants have repeatedly referred to Rhodes' disabilities as "alleged." (Dkt. 32, p. 17, ¶14)

In Exhibit 1, Notice of Decision by Social Security Administration, at pg. 0013, ¶2, the SSA noted that "claimant developed psychological difficulties after the motor vehicle accident. He had symptoms of post traumatic stress disorder. . . . " The SSA went on to find that "[h]e has moderate difficulties in maintaining concentration, persistence, or pace." Finally, the SSA noted that "[t]he evidence of record reveals the claimant has not been able to wear the prosthesis on a sustained daily basis. Additionally, the depression

and post traumatic stress disorder appear to impose significant impediments to his ability to sustain work." (Ex. 1 at Ex.1 at 0013)   The SSA decision was issued in 2002, based on evidence from the time of the accident in November, 2000, up to the point of the decision.

Leanne Buttross, Ph.D., in the analysis by Neuroresources (Ex. 1 at Ex. 2) found that "[t]he patient had a left traumatic transtibial amputation" . . . . and that "[t]he patient reportedly sustained a traumatic brain injury . . . ."  (Ex. 1 at Ex. 2 at 0019) The Neuroresources report further noted that "[t]he patient continues to experience residual impairment secondary to the brain injury he sustained in November, 2000.  The majority of these residual impairments were observed in the areas of sustained attention, memory, visuoperceptual skill, and information processing speed." (Ex. 1 at Ex. 2 at 0020, ¶1) Neuroresources noted that "[a] psychological evaluation was completed by Robert Martin, Ph.D., on January 2, 2006. . . .  At that time, the patient was given diagnoses of Post-traumatic Stress Disorder." (Ex. 1 at Ex. 2 at 0021) In the instant case Langston admitted that Rhodes had disabilities in the form of learning disabilities as well as a physical disability.  At Exhibit 1, at Exhibit 5, Marc Flemon, Langston ADA Compliance Officer, noted that "Brent[sic] has been diagnosed with a medical disability and a psychiatric disablity, which may adversely affect his academic progress."  Finally, Stephanie Adams, also a Langston University Compliance Officer, testified "He (Brent Rhodes) was suffering from PTSD.  He had a prosthetic leg and had some learning - I'll say learning disabilities. . . . " (Ex. 2 at 0106, ll 5 - 7)

**Objection to Paragraph 10:** Defendants say they object to the report from Neuroresources because it is hearsay and there is no affidavit or declaration, which is incorrect.  Exhibit 1 at Exhibit 2 starts with an Affidavit from Leanne Buttross, Ph.D., who testified that Neuroresources had been retained to test Brent Rhodes for purposes of evaluating him for the Department of Rehabilitative Services so that Rhodes' disabilities could be quantified.  The examination was done July 13, 2006, before Rhodes attended Langston University and Leanne Buttross supplied her Affidavit on July 26, 2010, before it was filed with Plaintiff's Response.

**Objection to Paragraph 12:**   Rhodes only took one statistics class in the fall of 2006, and that was with Ross Pourdanood, who signed on August 22, 2006, agreeing to provide Rhodes with accommodations.  (See Ex. 2 at Ex. 2, 0137)   Plaintiff attended Langston University beginning in August, 2006 (admitted in May, 2006) until May, 2008.  Rhodes suffered discrimination in that he was not provided necessary accommodations, which became obvious when he was forced out of the school in May, 2008.  Between fall 2006 and  May, 2008, Rhodes did not break his attendance at Langston University and, therefore, an incident that occurred early in his time of attendance is not subject to a statute of limitations argument because it is not an isolated incident and was part of a course of conduct by Langston which engaged in a continuing violation.  Even if certain acts are outside the statute of limitations they may be used as evidence.  See <u>Davidson v. America Online, Inc.</u> 337 F.2d 1179 (10th Cir. 2003) (complainant may use time barrred acts as background evidence in support of timely claim).

**Objection to Paragraph 13:**  Defendants know that Rhodes' first semester at Langston University was fall, 2006, which would be his "first" semester.  Defendants' exhibits, specifically Exhibit A at Exhibit 1, page 5231, [Dkt. 32-2] show that in fall 2006 Rhodes took two courses, Elementary Statistics and Concept Foundation of Professional Practice.  Rhodes took the nursing course in the University Women Building where the nursing courses were usually taught, and took the statistics course in another building.  Again, Rhodes' testimony as to his own medical condition is allowed under *Franklin v. Shelton*, and in addition, the condition was verified by Michael Kyles, M.D., who operated on Rhodes December 20, 2006.  (Ex. 1 at Ex. 8, pp 0035-0037)   On page 0038 Rhodes was instructed not to wear his prosthesis until otherwise instructed by Dr. Kyles.  In addition to the surgeon, the prosthetist, Marc Ridgely, provided a statement that he had worked with Brent Rhodes since 2001, and that from time to time Rhodes had to have surgical intervention as a result of physical aggravation of the limb due to overuse of his prosthesis.  (Ex. 1 at Ex. 7, pp 0030-0034)

**Objection to Paragraph 14:**   Rhodes is not quoting Mr. Sabolich.  Sabolich is the company that manufactures the prosthesis.  The individual prosthesist is Marc Ridgely.  Marc Ridgely has stated that he had worked with Brent Rhodes since 2001 providing Rhodes' prosthetic needs.

**Objection to Paragraph 15:**   The surgical records as well as the statement from Marc Ridgely, Prosthetist, are offered simply to show what Brent Rhodes has already testified to, that he had two surgeries, that he had a prosthetic leg that had to be adjusted

4

from time to time, and that from overuse of his prosthetic leg he developed infections and problems with his leg.  The problems with his leg occurred while in attendance at Langston University and, based on Rhodes' personal knowledge, were from overuse of his leg because of having to use stairs while the elevator was not available.  The direction for Rhodes not to use his prosthesis is at 0038, Exhibit 1 at Exhibit 8.  All medical records were provided to Defendants who obtained the records independently of Plaintiff.  The records provided are not statements but, instead, are provided only to verify and substantiate Rhodes' testimony that he had surgery on December 20, 2006.

**Objection to Paragraph 16:**   The ADA Compliance Officer was a Langston individual.  This is not hearsay because it is a statement by Brent Rhodes, not a third party.

**Objection to Paragraph 17:**    Plaintiff was ordered by Dr. Kyles not to use his prosthesis until cleared by Dr. Kyles. (P. 0038, Ex. 1 at Ex. 8) Rhodes had surgery on December 20, 2006, and when he came back to class in January, 2007, he attempted to use the wheelchair.  Brent Rhodes attempted to use a wheelchair and/or crutches in lieu of his prosthesis because it was prescribed by Dr. Kyles.  (Ex. 1 at Ex. 8, p 0038, ¶5 Special Instructions "No wearing of prosthesis until otherwise instructed by Dr. Kyles.")

The statement by Dr. Kent Webb at Exhibit 9 is not being offered for the "truth of the matter asserted" but is instead just to substantiate the fact that Brent Rhodes had surgery as he has testified.  Defendants' argument on the two year statute of limitations is inapplicable because Rhodes' Complaint is based on a course of conduct as opposed to

one isolated incident.  Until Rhodes was actually forced to leave Langston University, he did not have a cognizable claim against Langston, however, all of Langston's acts and its course of conduct, go into forcing Rhodes to leave.  Therefore, incidents which happened during Rhodes' uninterrupted tenure at Langston are relevant and not subject to a separate two year statute of limitations.  Even if certain acts are time barred, they may be used as evidence.  *Davidson* at Note 2.

**Objection to Paragraph 18:**  Paragraph 18 involves Rhodes' study habits during his entirety at Langston University and is relevant to his status as an otherwise qualified individual with disabilities.

**Objection to Paragraph 19:**  Defendants' objection is inappropriate as there are no statements being offered and, therefore, there is no hearsay.

**Objection to Paragraph 20:**  Again, Defendants' objection is misplaced as there are no statements being offered and, therefore, there is no hearsay.

**Objection to Paragraph 21:**  Defendants' objection is misplaced in that this was Rhodes' recollection of what happened.

**Objection to Paragraph 22:**  There is no statement being offered and, therefore, it is not hearsay.

**Objection to Paragraph 23:**  Defendants specifically included a statement that Plaintiff used racial epithets in its submission of a sworn declaration by Pam Stokes.  [Dkt 32-32 at ¶7]  Plaintiff's denial is appropriate rebuttal testimony.

**Objection to Paragraph 25:**  Plaintiff has identified the classes.  They were the

classes he took in the spring of 2008. Defendant attached a copy of Plaintiff's transcript at Dkt. 32-2 and, therefore, is aware of what classes Plaintiff took each and every semester he attended. Further, Defendants' conclusory statement that the various hospitals are handicap accessible creates the same problem Rhodes ran into at Langston University. Because the facility may consider itself handicap accessible, there are no provisions made for people who run into problems at those places. Further, Rhodes' statement in Paragraph 25 is as to an accommodation for his learning disabilities and does not refer to his physical disability.

**Objection to Paragraph 26:** The statement referred to is in the Bondy Evaluation which Defendants attached to their Motion and Rhodes as well attached to his Response at Exhibit 11. (See Ex. 1 at Ex. 11, p 0069 "Prosthesis became topic of discussion.") Defendants further testify that Rhodes' prosthesis was a problem. (See also Dkt. 32-19 at ¶3)

**Objection to Paragraph 27:** Rhodes is entitled to give his own opinion which is in contrast to the statements offered by Defendants as to the ultimate issue, i.e., that neither they nor anyone else at Langston discriminated against Rhodes. [Dkt. 32-1, ¶8; Dkt. 32-13, ¶12; Dkt. 32-19, ¶11; Dkt. 32-23, ¶10; Dkt. 32-28; ¶9; Dkt. 32-32, ¶8; Dkt. 32-33, ¶7]

**Objection to Paragraph 28:** The student harassing Brent Rhodes is identified in Paragraph 28 as Kimberly Lewis.

**Objection to Paragraph 30:** Plaintiff is able to state the basis for his surgery as

what he learned from his consultation with his surgeon.  The records provided from Kent Webb, M.D., were also obtained by Defendants, and are not provided for any reason other than to verify the dates and substantiate the fact that Plaintiff, in fact, did have a second surgery while attending Langston in the spring of 2008.

**Objection to Paragraph 32:**   Plaintiff is not offering any statements and, therefore, his assertion in Paragraph 32 is not hearsay.  Further, although Plaintiff has made requests to Defendants for records concerning accommodations offered to other students, Defendants have never provided such records.

**Objection to Paragraph 33:**   Defendants' objection is misplaced.  Paragraph 33 is a statement of Brent Rhodes' understanding, and if Defendants want to challenge it as untrue they may do so, however, it is admissible as Brent Rhodes' understanding.

**Objection to Paragraph 37:**   Defendants raised the issue of Southern Nazarene University.  Plaintiff would agree that Southern Nazarene University and Rhodes' experience there would normally be irrelevant, however, Defendants made a point of Plaintiff's status at SNU.  Defendants also used records from SNU in support of their Motion.  Defendants say that Plaintiff was suspended in the spring of 2009 from SNU because of an emergency suspension.  (See p. 2 Defendants' Brief in Support) Plaintiff is well within his rights to attach documents which refute Defendants' hearsay statements by the Provost of SNU.  Further, Defendants included two letters that were not sworn to from individuals at SNU with their Motion for Summary Judgment.  (See Dkt. 32-35) Defendants then included a lengthy email from an individual named Scott Strawn who

did not provide any type of sworn statement, and Defendants further included hearsay evidence of medical records at Dkt. 32-35, p. 57. Rhodes is refuting these hearsay statements with the SNU-OCR agreement his complaint precipitated.

**Objection to Paragraph 38:** Defendants object to the statement between the Office of Civil Rights and Langston, however, they assert in their Brief "Plaintiff received appropriate accommodations for his alleged disabilities at Langston. Also there was no discrimination against him with regard to the buildings on campus or in his rotations." [Dkt. 32 at 11, (Brief at p. 2); Dkt. 32-33, ¶7]  Obviously, if Defendants did not want to raise the issue of what they have agreed to do based on Rhodes' complaint to OCR, their conduct with the OCR would not be relevant. However, Defedants have continued to assert that they never discriminated against Plaintiff although their agreement with the Office of Civil Rights would imply otherwise. Defendants cannot first argue that Rhodes had complete access to the Langston campus because it was in compliance with the ADA and then ask that evidence of Langston's agreement based on Rhodes' complaint be excluded.

## William Moore's Affidavit - Exhibit 3

William Moore's Affidavit is relevant to the instant case because Moore attended Langston University and was in the nursing program at the same time Brent Rhodes was and, in fact, was in classes with Brent Rhodes and knows Brent Rhodes. Moore's experience with discrimination as a student with a learning disability at Langston is relevant. Defendants' argument seems to be that all of Moore's statements are irrelevant,

9

however, they go to the issues in this case, which is whether Langston University treated students with disabilities less favorably than students without disabilities.

**Carolyn Kornegay Deposition - Exhibit 4**

Defendants' objection to Exhibit 7 is misplaced because the document itself is clearly from Langston University and was signed by a retention specialist on May 6, 2008, making references to the fact that Rhodes was referred to Dr. Montgomery or Richard Mumford for advice on what he needed to do. The document is a statement by Defendants. Defendants then object to Exhibit 8 which is a statement taken of Dr. Kornegay, the deponent, by Jessie Alvarez, an attorney at the Office of Civil Rights. On pages 65 through 66 Kornegay verified the interview and, therefore, it does not have to be a sworn statement, but rather something identified by Dr. Kornegay who was under oath.

**Exhibit 5**

Exhibit 5 is not a hearsay statement because it is a statement against interest by Langston University in that the instructor was agreeing with Brent Rhodes that hopefully Langston University, specifically the nursing program, would get air-conditioning in their new building.

## CONCLUSION

Based on the foregoing, Plaintiff requests this Court allow all exhibits he has proffered as appropriate in support of his opposition to Defendants' Motion for Summary Judgment, and such other and further relief as this Court deems equitable and appropriate.

          Respectfully submitted,

          s/Mark T. Hamby
          Mark T. Hamby, OBA #16942
          Oklahoma Bar No. 16942
          Attorney for Plaintiff
          Bonham & Howard, P.L.L.C.
          15 West 6th Street, Ste. 2066
          Tulsa, Oklahoma 74119
          Phone: 918-744-7440  Fax: 918-744-9358

## *CERTIFICATE OF SERVICE*

I, Mark T. Hamby, hereby certify that on the 23rd day of August, 2010, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

    David W. Lee, OBA #5333
    Emily B. Fagan, OBA #22427
    Lee Law Center, P.C.
    6011 N. Robinson Avenue
    Oklahoma City, OK 73118-7425
    Attorneys for Defendants

          s/ Mark T. Hamby
          Mark T. Hamby