## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BRENT L. RHODES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV-09-862-R** |
| | ) | |
| **LANGSTON UNIVERSITY, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter comes before the Court on the Motion for Summary Judgment, filed by Defendants, Langston University, Board of Regents for Langston University, Dr. JoAnn Haysbert and Dr. Carolyn T. Kornegay.  Plaintiff responded in opposition to the motion. Having considered the parties' submissions, the Court finds as follows.

Plaintiff was enrolled at Langston University in its nursing program when he chose to withdraw during the Spring 2008 semester, asserting at the time that his rights under the Americans with Disabilities Act ("ADA") had been violated.  Plaintiff contends that he was denied accommodations required by his disability under both the Rehabilitation Act and Title II of the ADA.  He also seeks relief under 42 U.S.C. § 1983, asserting due process and equal protection violations, and he seeks to recover under Oklahoma state law.  Defendants seek summary judgment on each of Plaintiff's claims.

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law. Fed.R.Civ.P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 561 F.2d 202, 204 (10th Cir.1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir.1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At the outset the Court notes that Plaintiff is seeking relief from Drs. Haysbert and Kornegay solely in their official capacities. "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official

2

personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, the only true Defendant in this action is Langston University, and all references to Defendant hereinafter shall be to Langston.  Furthermore, the Court need not consider Defendant's invocation of qualified immunity, because qualified immunity is only available in suits against officials sued in their individual capacities, not in official capacity suits.  *Starkey ex rel. A.B. v. Boulder County Social Servs.*, 569 F.3d 1244, 1263 n. 4 (10th Cir.2009).  As a result of Plaintiff's stipulation that he is not seeking relief against the individuals in their individual capacities, his 42 U.S.C. § 1983 claims must be dismissed without prejudice for want of jurisdiction.  Neither the state nor state officials sued in their official capacities are considered "persons" under § 1983 and therefore Plaintiff's § 1983 claims against  defendants must fail. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  The same holds true for Plaintiff's state law claims against Defendants.   There is no basis in Okla. Stat. tit. 25 § 1101, Oklahoma's Anti-Discrimination Act, for abrogating the State's immunity from suit in federal court.  *See Osborne v. Oklahoma Employment Sec. Comm'n*, 2006 WL 2090089, at *4 (W.D.Okla. July 25, 2006)(explaining that agencies of the State cannot be sued in federal court for alleged *Burk v. K-mart* torts).  Claims III, IV and V are hereby DISMISSED.

In a supplement to the motion for summary judgment Defendant argues it is entitled to Eleventh Amendment immunity.  The Court begins its analysis with Defendant's assertion of Eleventh Amendment immunity, because such immunity if applicable precludes the Court from requiring Defendant to defend against Plaintiff's claims.

3

Absent valid Congressional abrogation or waiver by the State, the Eleventh Amendment bars suits against state agencies, regardless of whether they seeks damages or some other type of relief. *Fed Maritime Comm'n v. S.C. States Ports Auth.*, 535 U.S. 743, 765 (2002). Accordingly, the Court must examine the types of claims brought by Plaintiff and the relief sought to determine whether the Eleventh Amendment bars the claim. In responding to the motion for summary judgment, Plaintiff clarifies his claims and the nature of the relief sought for those claims. Plaintiff contends that he is seeking damages, not prospective injunctive relief or declaratory judgment for past violation of his rights. [1]

Pursuant to the Eleventh Amendment to the United States Constitution, the states are immune from "any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court of the United States has made clear that "[e]ven though the Amendment by its terms . . . applies only to suits against a State by citizens of another State, our cases have repeatedly held that this immunity also applies to unconsented suits brought by a State's own citizens." *Tennessee v. Lane*, 541 U.S. at 517 (internal quotation marks and citation omitted). Nevertheless, Congress may abrogate the states' Eleventh Amendment sovereign immunity. *See Bd. of*

---

[1] The Court rejects at the outset Defendant's contention that Plaintiff lacks standing and that his claims are moot because he has not been a student at Langston since he voluntarily withdrew in May 2008. Plaintiff does not dispute that he withdrew, but argues his claims are not moot because he does not seek injunctive relief, rather he seeks damages. The Court agrees with Plaintiff, see Charles Alan Wright et al., Federal Practice and Procedure § 3533.3 (damages should be denied on the merits, not on grounds of mootness). As such, summary judgment is denied on the grounds of mootness.

Defendant is correct in noting that Plaintiff cannot recover punitive damages under either the Rehabilitation Act or the ADA. Plaintiff, however, is not seeking such damages, and therefore, this argument provides no basis for summary judgment in Defendant's favor.

*Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 364 (2001).  Additionally, a State may waive its sovereign immunity.

42 U.S.C. § 2000d-7 provides that "[a] State shall not be immune under the Eleventh Amendment ... from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 ...." "[B]y accepting federal financial aid as specified in 42 U.S.C. § 2000d-7, states and state entities waive sovereign immunity from suit." *Robinson v. Kansas*, 295 F.3d 1183, 1189-90 (10th Cir. 2002) (collecting cases).  "Section 2000d-7 provides clear notice, and a state retains its authority to decline federal funds.  An affirmative choice to apply for, and accept, funds thus serves as an express waiver of immunity." *Brockman v. Wyoming Dept. of Family Svs.*, 342 F.3d 1159, 1168 (10th Cir. 2003).  Therefore, if Langston University accepts federal funds, it has made itself amenable to suit under the Rehabilitation Act.

Plaintiff asserts without citation to evidence that Defendant is a land grant university that receives federal funding.  Defendant does not deny that it accepts federal funds.  As such, Defendant is not entitled to dismissal of Plaintiff's Rehabilitation Act claim for damages on the basis of sovereign immunity.

Title II of the ADA does not contain the same provisions regarding waiver of sovereign immunity.  Defendant contends that pursuant to *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the waiver of sovereign immunity in the ADA was not effective so as to overcome Eleventh Amendment immunity.  Plaintiff

correctly notes that *Garrett* was a Title I ADA case, and thus not directly applicable in this case under Title II of the Americans with Disabilities Act.

Neither party acknowledges *United States v. Georgia*, 546 U.S. 151 (2006), wherein the Supreme Court held that Title II of the ADA validly abrogates state sovereign immunity so as to create a private cause of action for damages when the actions of the State actually violates the Fourteenth Amendment.

> [Congressional] enforcement power includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the States. *See Fitzpatrick*, supra, at 456, 96 S.Ct. 2666. Thus, insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.

*Id.* at 158-59. The Court also noted that Title II may have effectively abrogated Eleventh Amendment for a class of cases where the allegations do not indicate a constitutional violation, but nevertheless relief is appropriate. To that end, the Court instructed the district courts to:

> determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 159; *see also Guttman v. New Mexico*, 325 Fed.Appx. 687 (10th Cir. 2009). As noted, the parties did not address this case or this analysis. The Court finds, however, it is not necessary to conduct the analysis set forth in *United States v. Georgia*, because Defendant

is entitled to summary judgment on the merits of Plaintiff's Rehabilitation Act and ADA claims, as set forth below.

The parties agree that Plaintiff enrolled at Langston University in the Fall 2006, hoping to obtain a nursing degree.  At that time he had undergone a below the knee amputation of his left leg and wore a prosthesis.  He also suffered from post-traumatic stress disorder, which created a learning disability.  Both the amputation and post-traumatic stress disorder were the result of a car accident in 2000.  Plaintiff withdrew from Langston in May 2008, at a time when it was anticipated he would fail two clinical nursing courses.  He alleges that he withdrew because his disabilities were not adequately accommodated.  He also alleges that certain physical barriers to his education existed, namely that classes were scheduled in areas of campus that were not accessible.[2]

The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of his of her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).  Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be

_____

[2] Plaintiff acknowledges that his claims are subject to a two year statute of limitations period. Plaintiff alleges that during the Fall 2006 he had a class in a room on the third floor of the University of Women Building and that the elevator often was not functioning, resulting in having to take the stairs up three flights. Plaintiff contends that as a result of taking the stairs in the hot months that hair follicles on his leg became infected, necessitating surgery in December 2006. Plaintiff did not file this suit until August 12, 2009. In light of the two year statute of limitations period, any claim for damages arising from the failure to provide program accessibility is barred if it accrued prior to August 12, 2007. Plaintiff's contention that his claims did not accrue until he left Langston are without merit. As such, complaint regarding the Fall 2006 and Spring 2007 and the location of classrooms or the absence of accessible entrances are time barred.

excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Claims under the Acts may be considered in conjunction with one another, and cases under the Acts may be considered with regard to claims arising under either Act.  29 U.S.C. § 791(g); *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir.2007) ("We ... look to the ADA for guidance in resolving Rehabilitation Act claims.").

A prima facie case under § 504 or Title II consists of proof that (1) plaintiff is disabled as defined by the Acts; (2) he is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance (for Rehabilitation Act claims); and (4) the program discriminated against plaintiff.  *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010).  "Disability" under the Rehabilitation Act and the ADA includes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  In this case Plaintiff contends that as a result of his below the knee amputation that he is substantially limited in the major life activities of walking and caring for himself, and that his post traumatic stress disorder renders him substantially limited in the major life activity of learning.[3]

Defendants argue that Plaintiff is not disabled under the Acts by virtue of his prosthetic leg or his post-traumatic stress disorder.  Defendants contend that the fact that Plaintiff can walk using a prosthesis means he is not substantially limited in the major life

---

[3] Plaintiff asserts that Langston admitted he had disabilities, but has not specifically argued that he was regarded as disabled by Defendant.

8

activity of walking.  Plaintiff, conversely, argues that because he cannot walk without his prosthesis that he is substantially limited in the major life activity of walking and that because he cannot wear the prosthesis to bathe that he is substantially limited in the major life activity of caring for himself.  The need for and availability of a prosthetic limb is not outcome determinative in favor of either party.

> [T]he Supreme Court decided a series of cases in which it held that the corrective devices or mitigating measures employed by an individual are relevant to the determination of whether that individual is "substantially limited" in a major life activity.  In *Sutton* [*v. United Air Lines, Inc.*, 527 U.S. 471 (1999)], the lead case on this issue, the Supreme Court stated that "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-must be taken into account when judging whether that person is 'substantially limited' in a major life activity." *Sutton*, 527 U.S. at 482; *accord Murphy*, 527 U.S. at 520; *Albertson's*, 527 U.S. at 565-66.  The Supreme Court rejected the suggestion, however, that an individual's use of a mitigating measure or corrective device is determinative of whether that individual is disabled.

*Bartlett v. New York State Bd. of Law Examiners*, 2001 WL 930792, *31 (S.D.N.Y. 2001).[4]

> For a physical or mental impairment to be "substantially limiting" the individual must be: "(I) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

---

[4] Effective January 1, 2009, 29 U.S.C. § 705(9)(B) was amended to define disability "for the purposes of ... subchapter [ ] ... V ... of this chapter [29 U.S.C. §§ ... 790 et seq .]," i.e., for the purposes of the Rehabilitation Act, as "the meaning given in section 12102 of Title 42."  Section 12102(4)(e)(I) now provides that "[t]he determination of whether an impairment substantially limits a major life activity shall be made *without* regard to the ameliorative effects of mitigating measures . . . such as prosthetics including limbs."  Generally a court applies the laws in force when the complained of acts occurred.  *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).  Because the amendment could increase Defendant's liability for past conduct, the Court will not retroactively apply it to Plaintiff's case.

*Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 611 n. 11 (10th Cir. 1998)(quoting 29 C.F.R. §

1630.2(j)(1)).  "A medical diagnosis is insufficient, rather, 'the ADA requires plaintiffs to

offer evidence that the extent of the limitation caused by their impairment in terms of their

own experience is substantial.'"  *Id.* (quoting *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286

Fed.Appx. 586, 603 (11th Cir.2008)).

> In an effort to avoid summary judgment Plaintiff presented the following via affidavit:
>
> I am unable to walk, run and am non-ambulatory without the aid of a prosthesis, crutches, or a wheelchair.  Although I have a prosthesis now, the prosthesis cannot be worn while sleeping or bathing.

Affidavit, ¶ 3.  As noted, above, because this case arose out of pre-2009 events, the Court

must consider the impact of Plaintiff's prosthesis on his ability to care for himself and to

walk.[5]  The evidence presented by Plaintiff is wholly insufficient to establish that he is

unable to care for himself as compared to the general population because he cannot bathe

while wearing his prosthesis.  Furthermore, Plaintiff has not presented any evidence from

which the Court can determine the impact of his amputation and how his ability to walk

using the  his prosthesis compares with the walking ability of the general population.[6]

---

[5] If the 2009 amendments applied to Plaintiff's case he would undoubtedly be substantially limited with regard to the major life activity of walking, because the Court would not consider the use of his prosthesis.

[6] Plaintiff did have surgery during his tenure as a student at Langston that precluded him from using his prosthesis.  The first surgery took place outside the statute of limitations period, that is in December 2006, and thus is not considered for purposes of the motion.  The second "surgery" appears to be a series of procedures in March 2008, when Plaintiff had an abscess drained.  He had additional drainage procedures after his May 2008 departure from Langston.  Plaintiff testified at his deposition that the last time he used a wheelchair was January 2007, which coincides with his December 2006 surgery, and thus the Court infers from the evidence presented that Plaintiff was able to utilize his prosthesis following the procedures in 2008.

Although Plaintiff avers that his leg never cools off, especially in hot weather, he does not indicate either how far or for how long he can walk while using his prosthetic leg. Although the amputation will persist for Plaintiff's lifetime, the implications on his ability to walk as a result are not clear from the Plaintiff's evidence.[7] As a result, the Court finds that Plaintiff has failed to establish that he is substantially limited in the major life activity of walking, and thus have failed to establish prima facie case of discrimination under the Rehabilitation Act or the ADA with regard to his claims stemming from his status as an amputee. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Rehabilitation Act and ADA claims with regard to the claim based on his amputated left leg and the denial of access to buildings affiliated with the nursing program.

As noted, Plaintiff contends that he is substantially limited in the major life activity of learning as a result of post-traumatic stress disorder ("PTSD"). There is no dispute that Plaintiff has an impairment or that learning is a major life activity. Defendant argues, however, that Plaintiff's brain injury and post-traumatic stress disorder are not substantially limiting because Plaintiff was admitted to two different nursing programs and managed to obtain passing grades before Spring 2008 at Langston and later at Southern Nazerene University. In support of his contention that he is substantially limited in his ability to learn,

---

[7] The fact that the Commissioner of the Social Security Administration determined that Plaintiff was disabled for purposes of supplemental security income benefits does not affect this Court's decision. The standards in assessing a Social Security claim are different, and the Commissioner considers combinations of impairments and their impact on a claimant's ability to work. Additionally, the administrative law judge found that Plaintiff could stand or walk six hours in an eight hour day, which the Court would not conclude is substantially limiting.

Plaintiff presents the affidavit and report of Leanne Buttross, Ph.D., a neuropsychologist who examined Plaintiff in 2006 on behalf of the Department of Rehabilitative Services. She opined that "Mr. Rhodes exhibited several findings suggestive of learning disabilities that would require educational accommodations." The neuropsychological evaluation included assessments in a number of categories. Plaintiff scored in the average range in some categories and below average in others.

As noted above, in considering whether a claimant is substantially limited in a major life activity, he must present evidence that he is "[u]nable to perform a major life activity that the average person in the general population can perform" or that he is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(i)(1)(i), (ii).

The Court concludes that Plaintiff has failed to present evidence that he is substantially limited in the major life activity of learning. The sole assessment provided by Plaintiff in support of his contention of a substantial limitation indicates that he has no more than moderate impairments in any area in which he was assessed. As stated above, in many areas Plaintiff was only mildly impaired, and in others still he suffered no deficit.[8] Plaintiff achieved academic success before coming to Langston, and there is no indication in the

---

[8] For example, Plaintiff's overall intellectual functioning were in the average range, as was his verbal and nonverbal intellectual functioning.

record that he received any accommodations from the University of Central Oklahoma, Northwestern Oklahoma State University, Rose State University or Oklahoma City Community College, where he had those successes. Indeed, before he started his clinical work at Langston Plaintiff was receiving good grades, albeit with some accommodations.[9]

Although Plaintiff's brain injury is not expected to dissipate or disappear, the Court concludes that with regard to its nature and severity, and when compared with the general population Plaintiff is not significantly limited with regard to his ability to learn. Although it appears that Plaintiff had difficulty with certain types of learning, unless that difficulty translates into a substantial limitation on his "ability to learn as a whole, for purposes of daily living, as compared to most people," *Wong v. Regents of University of California*, 410 F.3d 1052, 1065 (9th Cir. 2005), he has not met his summary judgment burden.

Defendant further argues that Plaintiff is not "otherwise qualified," by virtue of his inability to perform the requisite tasks affiliated with the nursing program, even with the reasonable accommodation provided to him during the Spring 2008 semester. Defendant further argues that Plaintiff was provided all accommodations necessary by its faculty and that it was not required to alter the essential functions of the program to accommodate Plaintiff. The Court need not address these arguments in light of its conclusion that Plaintiff has failed to establish a genuine issues of material fact with regard to whether he was disabled under either the Rehabilitation Act or the ADA.

---

[9] Plaintiff actually complains about the absence of certain accommodations during his first three semesters at Langston. He states that he was not given additional time on at least one quiz during his statistics class in the Fall 2006 semester. Nevertheless he completed the course with a B grade.

13

For the reasons set forth herein, Defendant is entitled to summary judgment on Plaintiff's claims under the Rehabilitation Act and the ADA.  Plaintiff's claims under 42 U.S.C. § 1983 and Oklahoma state law are hereby dismissed without prejudice for want of jurisdiction.

IT IS SO ORDERED this 8th day of September 2010.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

14